# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| APRIL KIMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| QUALITY ASSIST, INC. | ) | |
| and TRACEY BANKHEAD, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff April Kimble and files this Complaint against Defendants Quality Assist, Inc. ("QA") and Tracy Bankhead ("Bankhead"), through undersigned counsel, showing the court as follows:

## INTRODUCTION

1.

This is a lawsuit for race discrimination, gender non-conformity discrimination and retaliation brought pursuant to violations of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

2.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

3.

Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendants reside in the Northern District of Georgia, Atlanta Division, and the claims arose within the district and division of the Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.

Plaintiff timely filed a charge of discrimination against Defendant QA, with the Equal Employment Opportunity Commission, ("EEOC") on May 23, 2016 and received a "Notice of Right to Sue" on her charges from the EEOC on March 5, 2019.  Plaintiff's Charge to the EEOC served to provide notice of the Charge to Defendant QA and Defendant QA was afforded the opportunity to participate in the investigation and conciliation of this Charge.  This action is filed within ninety days of the Plaintiff's receipt of the "Notice of Right to Sue." Thus, administrative remedies have been exhausted.

## PARTIES

5.

Plaintiff April Kimble ("Ms. Kimble" or "Plaintiff") is an African American, United States citizen and is entitled to bring actions of this type and nature.  She submits herself to the jurisdiction of this Court.  She was, at all times relevant to this action, an "employee" within the meaning of 42 U.S.C. § 2000-e.

6.

Defendant QA is a private company organized and registered under the laws of the state of Georgia, employing in excess of fifteen (15) employees, for each working day in each of the twenty (20) calendar weeks in the current or preceding calendar year and located in the state of Georgia, in this federal district and this division. At relevant times hereto, QA has maintained its offices, conducting regular, not isolated acts of business in Fulton County, Georgia and in the Northern District of Georgia, Atlanta Division.

7.

QA may be served with process via its Registered Agent, Annette Sibley, at 17 Executive Park Drive, Suite 600, Atlanta, Georgia 30329.

8.

Tracy Bankhead as Director of Instructional Design acted as Ms. Kimble's

supervisor at QA offices during all times relevant to this action and was/is an employer within the meaning of 42 U.S.C. §1981.  She is a citizen and resident of the State of Georgia.  She may be served with process at the office of Quality Assist, Inc., 17 Executive Park Drive, Suite 600, Atlanta, Georgia 30329.

## **FACTS**

9.

Ms. Kimble was, at all times relevant to this action, an employee of Quality Assist.

10.

Ms. Kimble worked for QA as a Content Developer II from September 24, 2015 to May 23, 2016.

11.

Her primary duties included editing and co-writing on-line training modules in early education.

12.

Plaintiff's supervisor was Tracy Bankhead. Her title was Director of Instructional Design for Defendant QA.

13.

Throughout Plaintiff's employment, she was told by Bankhead that

employees were not paid on their lunch breaks.

14.

In or around May 2016, Plaintiff asked Human Resources Director Ms. Mow about QA's policy on paying employees while on lunch. Ms. Mow informed Plaintiff that employees are paid for their lunch breaks.

15.

On or about May 20, 2016, Plaintiff emailed Ms. Bankhead about the discrepancy. In the email, Plaintiff informed Ms. Bankhead that Melissa Ramey, a heterosexual, similarly-situated Caucasian peer was being paid for her lunch breaks.

16.

Subsequent to the email, Plaintiff met with Ms. Bankhead about the discrepancy at which time Ms. Bankhead labeled Plaintiff's act of following up on this issue as "not professional."

17.

Plaintiff spoke again with Ms. Mow as well. Plaintiff told her how Melissa Ramey was being paid on her lunch break, while she was not being paid for hers.

18.

In addition, Plaintiff told Ms. Mow about the conversation between her and Bankhead and how Bankhead labeled Plaintiff as "unprofessional."

19.

Plaintiff also complained to Ms. Mow about other examples of discrimination she had experienced.

20.

After Plaintiff complained, Ms. Mow sent Plaintiff home for the rest of the day (Friday, May 20, 2016). Mow told Plaintiff to decide if she could continue working with Defendant Bankhead in the future.

21.

Three days later on May 23, 2016, Ms. Kimble was fired by Annette Sibley, President and CEO.

22.

Sibley told Plaintiff that after deliberating about her performance, the company had determined that Plaintiff was not a "mutual fit."

23.

Just one month prior on April 25, 2016, Ms. Bankhead wrote Plaintiff a letter of recommendation in support of Plaintiff's acceptance into graduate school at Troy State University.

24.

Bankhead's letter of recommendation described Plaintiff as "enthusiastic and

hardworking."  Bankhead's letter further stated Plaintiff had "extensive experience working as a trainer and technical assistance provider," and that Plaintiff has "developed and received approval for over 35 training sessions from Georgia's Department of Early Care and Learning…"

25.

Plaintiff never received negative feedback or experienced any disciplinary actions while working for Defendants until she complained about race and gender non-conformity discrimination.

26.

After Plaintiff complained about race discrimination and gender non-conformity discrimination, she was sent home and terminated three days later.

27.

Defendants acted willfully in all the above-stated discriminatory and retaliatory actions against Ms. Kimble, violating her federally protected rights.

28.

The effect of Defendants' above-stated actions has been to deprive Ms. Kimble of employment opportunities, income in the form of regular wages, prospective employment benefits, and other benefits to which she would have been entitled but for Defendants' illegal actions.

29.

The effect of Defendants' above-stated actions has also caused Ms. Kimble to suffer out-of-pocket losses and mental and emotional distress for which he seeks redress.

## SUBSTANTIVE ALLEGATIONS

## COUNT ONE: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

### Defendant Quality Assist

30.

Defendant QA violated Title VII by discriminating against Plaintiff for her not conforming to gender because she is a homosexual female.

31.

Defendant treated similarly-situated, heterosexual employees who more closely conform to their gender, more favorably than Ms. Kimble. For example, Defendant paid similarly-situated heterosexual employees for lunch breaks while not paying for the Ms. Kimble's lunch breaks; and by not mandating that the similarly-situated heterosexual employees sign in and out at lunch time.

32.

Defendant's discriminatory treatment against Ms. Kimble was done in part because of Plaintiff's sexuality and not conforming to her gender. Defendant's

actions were a violation of 42 U.S.C. § 2000e et seq.

33.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff in violation of her federally protected rights.

34.

Defendant's actions were reckless and taken in willful disregard of the probable consequences of its actions.

35.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury.

36.

As a result of Defendant QA's unlawful conduct, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury.  Plaintiff has also suffered lost wages and the benefits of employment, which she seeks to recover from Defendant.

## COUNT II: TITLE VII GENDER RETALIATION

### Defendant Quality Assist

37.

Plaintiff reported her opposition to the sex discrimination she suffered to Human Resources Director, Ms. Mow, on Friday, May 20, 2016.

38.

As a result, Defendant retaliated against Plaintiff by sending her immediately home for the day.

39.

Upon Plaintiff's return to work on Monday, May 23, 2016, Defendant further retaliated against Plaintiff by terminating her employment.

40.

Defendant's retaliation against Plaintiff violated 42 U.S.C. § 2000-e, et seq.

41.

But for Plaintiff's complaint of sex discrimination due to gender conformity, Plaintiff would not have been terminated.

42.

Defendant's termination of Plaintiff was retaliation for protected activity under the opposition clause of Title' VII's anti-retaliation provisions and violated

10

Plaintiff's right to engage in protected activity.

43.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including an award of punitive damages.

44.

As a direct result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, mental and emotional distress, humiliation, damage to her reputation, the deprivation of her rights under federal law, and is entitled to compensatory and punitive damages.

45.

As a consequence of Defendant's unlawful conduct, Plaintiff suffered lost wages and other benefits of employment.

## COUNT III: TITLE VII RACE DISCRIMINATION

### Defendant Quality Assist

46.

Defendant discriminated against Plaintiff based on her race, African American, in the terms and conditions of her employment by disciplining her and terminating her in violation of Title VII.

47.

Plaintiff's race was a motivating factor in the discipline and termination of her employment.

48.

Defendant QA's actions were willful, wanton, and intentionally directed to harm Plaintiff.

49.

Defendant QA's actions were reckless and taken in willful disregard of the probable consequences of its actions.

50.

Defendant QA has acted with malice or reckless indifference to the rights of Ms. Kimble. Therefore, Plaintiff is entitled to punitive damages for the egregious actions of Defendant QA.

51.

Because of Defendant's intentional violation of the rights of Plaintiff, secured by Title VII, Plaintiff suffered anguish, humiliation, distress, harm to reputation, inconvenience, physical damage, emotional damage, damage to her professional reputation, and loss of enjoyment, entitling her to compensatory damages.

52.

Defendant QA's actions and failures were the proximate, and but for cause of the harm suffered by Plaintiff as alleged herein.

53.

To remedy the violation of Plaintiff's rights, she is entitled to an award of back pay and benefits, compensatory damages, attorney's fee, and all other appropriate damages, remedies and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT IV: TITLE VII RACE RETALIATION

### Defendant Quality Assist

54.

Defendant QA terminated Ms. Kimble in retaliation for her complaint of discrimination based on race in violation of Title VII, 42 U.S.C. § 2000-e, et seq.

55.

Plaintiff's termination occurred within three (3) days of her complaint of race discrimination to management and Human Resources. Thus, her complaint and termination were causally connected.

56.

But for Plaintiff's act of reporting race discrimination, she would not have

been terminated.

57.

Defendant's stated reason for termination, "not a mutual fit" was pretext for race discrimination and retaliation for complaining about race discrimination.

58.

Defendant's retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions violated Plaintiff's right to engage in protected activity.

59.

As a direct result of Defendant's actions and omissions, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to her reputation, the deprivation of her rights under federal law, and is entitled to compensatory and punitive damages.

## COUNT V: RACE DISCRIMINATION- 42 U.S.C. SECTION 1981

### Defendants QA and Tracey Bankhead

60.

Plaintiff was discriminated against because of her race, African American, in violation of 42 U.S.C. §1981.

61.

Plaintiff's supervisor, Defendant Bankhead, treated Ms. Kimble differently than her Caucasian co-workers. The discriminatory treatment was noticed by other co-workers of Plaintiff as well. Plaintiff's comparator was a Caucasian female named Melissa Ramey.

62.

For example, Bankhead forced Ms. Kimble to sign in and out for her lunch breaks and when a restroom break was necessary. Caucasian co-workers, including Melissa Ramey, were not subjected to the same treatment. In addition, per company policy, lunch breaks were supposed to be paid, but Bankhead did not pay Plaintiff for hers.

63.

As stated supra, Defendant Quality Assist also subjected Plaintiff to race discrimination on her terms and conditions of employment.

64.

All of these actions constituted race discrimination in violation of 42 U.S.C. § 1981.

65.

As Defendants' conduct was willful and deliberate, Plaintiff is entitled to all

relief afforded under the statute, including an award of punitive damages.

**COUNT VI: RETALIATION- 42 U.S.C. SECTION 1981**

**Defendants Quality Assist and Tracey Bankhead**

66.

Defendants retaliated against Ms. Kimble in violation of the anti-retaliation provisions of 42 U.S.C. §1981.

67.

Just three (3) days after Plaintiff complained of race discrimination by her supervisor, Bankhead, Defendant QA terminated her employment using the pretextual reason of "not a mutual fit."

68.

Plaintiff's termination occurred as a direct result of her opposition to the discrimination she suffered based on race in violation of the provisions against retaliation in 42 U.S.C. § 1981. But for Plaintiff's act of complaining about the discrimination she suffered based on race, she would not have been terminated.

69.

Defendants' actions in terminating Ms. Kimble following her complaints of race discrimination were committed with reckless disregard for her right to be free from discriminatory treatment on account of her opposition to discriminatory

practices and in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

70.

As a result of Defendants' unlawful conduct, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which she seeks to recover from Defendants.

**WHEREFORE**, Plaintiff prays that this Court:

(a)     Take jurisdiction of this matter;

(b)     Clerk to issue summons as attached;

(c)     Permanently enjoin Defendant from future discriminatory acts relative to discrimination based on gender and race for opposing gender and race discrimination;

(d)     Enter a judgment that Defendant's conduct violated Title VII;

(e)     Issue a declaratory judgment that Defendants Quality Assist and Tracey Bankhead, in her individual capacity, violated 42 U.S.C. § 1981;

(f)     Enter an award that both Defendants' conduct violated 42 U.S.C. § 1981;

(g)     Award Plaintiff front pay;

(h)     Award Plaintiff back pay and lost benefits resulting from Defendant's unlawful discrimination and tortious conduct;

(i)     Award Plaintiff pre-judgment interest;

(j)     Award Plaintiff compensatory damages in an amount to be determined in the enlightened conscience of the jury to compensate Plaintiff for the mental and emotional distress she has suffered a result of Defendants' discriminatory and retaliatory conduct;

(k)     Award Plaintiff punitive damages against Defendants in an amount to be determined in the enlightened conscience of the jury to punish Defendants for their willful violation of Plaintiff's federal rights and deter such conduct in the future;

(l)     Award Plaintiff nominal damages;

(m)     Award Plaintiff her costs and expenses of this action, including reasonable attorney's fees as authorized by 42 U.S.C. §§ 1988 and 2000e and § 1981;

(n)     Grant a trial by jury; and

(o)     Award such other and further relief as the Court deems just and proper.


Respectfully submitted, this 3rd day of June, 2019.

(Signatures on next page)

18

/s/ Beverly A. Lucas
Georgia Bar No.:  427692
Lucas & Leon, LLC
P.O. Box 752
Clarkesville, Georgia 30523
T: (706) 752-2001
F: (706) 752-8085
beverly@lucasandleon.com

/s/ Meredith J. Carter
Meredith J. Carter
Georgia Bar No.:  325422
M. CARTER LAW LLC
2690 Cobb Parkway, S.E.
Suite A5-294
Smyrna, Georgia 30080
T: (404) 618-3838
meredith@mcarterlaw.com

Attorneys for April Kimble

## **CERTIFICATE OF FONT COMPLIANCE**

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

/s/ Beverly A. Lucas
Beverly A. Lucas
Georgia Bar No. 427692